UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY RENE J.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Case No. 2:23-cv-11131
District Judge Stephen J. Murphy, III
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), and AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**I. RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II. REPORT**

Although she was represented by counsel before the Administrative Law Judge (ALJ) below, Kelly Rene J. ("KRJ") brings this action *in pro per* under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance (DI) under Title II of the Social Security Act.[1] This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15), and the administrative record (ECF No. 8).

A.    **Background and Administrative History**

1.    **January 9, 2017 applications**

On January 9, 2017, KRJ filed applications for Title II and Title XVI benefits.  (ECF No. 8, PageID.66.)  The applications were denied at the initial level on January 14, 2017 and July 14, 2017.  (ECF No. 8, PageID.66, 125.)

KRJ sought a hearing before an Administrative Law Judge (ALJ), and, on November 16, 2018, KRJ appeared and testified at a hearing.  (ECF No. 8, PageID.125.)  On December 31, 2018, ALJ John Dodson issued an unfavorable

---

[1] Although Plaintiff's form complaint indicates she is appealing a decision on her Supplemental Security Income Claim (Title XVI), for which this Court's jurisdiction would be based on 42 U.S.C. § 1383(c)(3) (ECF No. 1, PageID.2), the ALJ decision attached to her pleading pertains to her Title II application (*see id.*, PageID.9).

decision on the Title XVI (SSI) application. (ECF No. 8, PageID.122-143.) The Appeals Council denied review of that decision on February 14, 2020. (*Id.*, PageID.66.)

### 2. August 12, 2020 applications

On August 12, 2020, Plaintiff filed Title II and Title XVI applications, alleging disability beginning June 1, 2016. (*Id.*, PageID.66-67, 81, 473.) As for her Title XVI SSI application, Plaintiff was found disabled as of September 2, 2020, *i.e.*, the day before her 50th birthday. (ECF No. 8, PageID.67, 82, 209, 216, 223, 230.)

### 2. September 22, 2020 applications

A little more than a month later, KRJ applied for disability insurance (DI) and supplemental security income (SSI) benefits, in each case alleging disability beginning June 1, 2016, at the age of 45. (ECF No. 8, PageID.365-376.) In her disability report, she lists several conditions (migraine, head trauma, back/neck pain, leg pain, fatigue, vertigo, bilateral arm rotator cuff tears, and traumatic brain injury 2018) as limiting her ability to work. (*Id.*, PageID.397.)

Plaintiff's applications were denied initially and on reconsideration. (*Id.*, PageID.150-203, 237-252 [January 2021], 204-231 [April 2021]; *see also id.*, PageID.253-254.) In a notice dated May 27, 2021, the Social Security Administration (SSA) found "the previous determination was proper under the

law[,]" and determined KRJ's "condition was not disabling on any date through [December 31, 2016], when [she was] last insured for disability benefits." (*Id.*, PageID.255-260.)

In June 2021, KRJ sought a hearing with an ALJ. (*Id.*, PageID.261-262.) Subsequently, she sought to reopen her prior Title II claim. (*Id.*, PageID.66; *see also id.*, PageID.467-471, 473-475.) On January 25, 2022, ALJ Donald D'Amato conducted a hearing, at which the claimant, her attorney, and a VE appeared (*id.*, PageID.88-121). On April 22, 2022, ALJ D'Amato issued an unfavorable decision as to KRJ's Title II application, determining that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, PageID.63-87.)

KRJ requested review (*id.*, PageID.356-357); however, on March 14, 2023, the Appeals Council (AC) denied the request for review (*id.*, PageID.52-56). Thus, ALJ D'Amato's decision became the Commissioner's final decision. Plaintiff timely commenced this action on May 12, 2023. (ECF No. 1.)

**B.    Plaintiff's Medical History**

The administrative record contains approximately 709 pages of medical records, seemingly dated October 2014 to December 2021. (ECF No. 8, PageID.476-1184 [Exhibits B1F-B18F]). Exhibits B1F-B15F were available to the ALJ at the time of his April 22, 2022 decision (*see id.*, PageID.85-87); however, it appears that certain exhibits from May Antone, M.D., P.C. dated 2014 to 2018

4

(Exhibits B16F-B18F) were before only the Appeals Council (*see id.*, PageID.55-56). These records will be discussed in detail, as necessary, below.

### C. The April 22, 2022 Administrative Decision[2]

Pursuant to 20 C.F.R. § 404.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date (AOD) of June 1, 2016 through her date last insured (DLI) of December 31, 2016. (ECF No. 8, PageID.69.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: cervical spondylosis C5-C6 level with bilateral foraminal narrowing without significant spinal stenosis; small full thickness tear of the supraspinatus tendon, tendinosis tendinopathy of both the infraspinatus and subscapularis tendons, and mild subacromial subdeltoid bursitis, left shoulder; full thickness tear of the posterior margin supraspinatus tendon and tendinosis tendinopathy of the subscapularis and biceps tendon, right shoulder; venous insufficiency, status post bilateral

---

[2] In her motion, Plaintiff claims to seek "relief for the period from January 2017 to August 2020[,]" (ECF No. 12, PageID.1191), *i.e.*, for the period from her first to second applications. To the extent Plaintiff's motion for summary judgment and related reply purport to challenge ALJ Dodson's December 31, 2018 denial of the January 9, 2017 application for Title II benefits (*see* ECF No. 12, PageID.1190 & ECF No. 15, PageID.1232), Plaintiff has attached only ALJ D'Amato's April 22, 2022 denial of Plaintiff's application for Title II benefits (*see* ECF No. 12, PageID.1197-1212 & ECF No. 1, PageID.8-29), which written decision explains: "The previous determination is being reopened because new and material evidence (discussed in detail below) has been submitted (20 CFR 404.988)." (ECF No. 8, PageID.66.)

5

endovenous ablations of the saphenous veins and bilateral ultrasound guided foam sclerotherapies; gastritis; and obesity. (*Id.*, PageID.69-71.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*, PageID.71-72.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[3] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b). She could lift and/or carry 10 pounds frequently and 20 pounds occasionally (from very little up to 1/3 of an 8-hour workday). She could walk (with normal breaks) for 6 hours in an eight-hour workday. She could stand (with normal breaks) for 4 hours in an eight-hour workday. She could stand for 30 minutes at one time before needing to sit for 2 minutes before resuming standing while remaining on task. She could sit (with normal breaks) for 6 hours in an eight-hour workday. She could sit for 30 minutes at one time before needing to stand for 2 minutes before resuming sitting while remaining on task. She could perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for two-thirds of an 8-hour workday [*i.e., exertional limitations*]. There could be no more than occasional overhead reaching with the upper extremities. She could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an 8-hour workday [*i.e., manipulative limitations*]. She needed to avoid hazards such as moving machinery and unprotected heights, but did not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors. Job responsibilities could not include the use of

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

6

>hand-held vibrating or power tools. She needed to be restricted to a work environment with good ventilation that allowed her to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity [*i.e., environmental limitations*]. She could perform occasionally: climbing stairs with handrails, stooping, crouching, and kneeling but needed to avoid climbing ladders, scaffolds, and ropes and crawling [*i.e., postural limitations*].

(*Id*., PageID.72-79.) At **Step 4**, the ALJ determined that, through the DLI, Plaintiff was unable to perform any past relevant work. (*Id*., PageID.79.) Then, at **Step 5**, the ALJ determined that, through the DLI, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id*., PageID.80-81.) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2016, the AOD, through December 31, 2016, the DLI. (*Id*., PageID.81.)

    **D.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

7

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff's failure to include an "Issues Presented" page, as required by my online Practice Guidelines for Social Security cases, makes it difficult to pinpoint what is on appeal. *See also* E.D. Mich. LR 7.1. Having reviewed Plaintiff's pleading and motion, the Court addresses the issues identified in the complaint's "Statement of Claim" and the motion's "Law and Argument." (ECF No. 1, PageID.3-4; ECF No. 12, PageID.1192-1194.)

#### 1. Plaintiff's DLI (December 31, 2016)

Plaintiff initiated this case using a form "Complaint for Review of a Social Security Disability or Supplemental Security Income Decision." (ECF No. 1.) Within a section titled, "Statement of Claim," Plaintiff identifies only one error: "There was an err[or] on behalf of Social Security Administration in the year of 2010[.] [T]he quarterly amount of credit was less than what I earned credit for that year. This error effected [sic] the decision from the Social Security Supplemental Administration." (*Id.*, PageID.3-4.)

Here, the Court suspects Plaintiff intended to challenge the accuracy of the Detailed Earnings Query, upon which the ALJ expressly relied at Step 4. (ECF

9

No. 8, PageID.79, 377-380.)  By way of background, the ALJ in Plaintiff's case noted that her "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2016." (ECF No. 8, PageID.67.)  Then, at Step 4, the ALJ determined that, through the DLI, Plaintiff "was unable to perform any past relevant work[,]" stating in part:

> In her Work History Report, the claimant reported that she worked as an administrative assistant for The Advent Group from June 2009 through September 2010 ([ECF No. 8, PageID.429]).  Earnings records, however, show earnings from this employer only during 2009 in the amount of $6,028.20 ([*id.*, PageID.378]).  There are no earnings in 2010 other than from Lifetime Fitness ("LTF") Club Management Company (Id.), where she worked as a cosmetologist ([*id.*, PageID.429]).

(ECF No. 8, PageID.79.)  *See* 20 C.F.R. § 404.1565.

If Plaintiff intended to argue that the Detailed Earnings Query – which only lists 2010 earnings of $1,999.54 from LTF Club Management Company, L.L.C. (*see* ECF No. 8, PageID.378) – omitted other income from 2010 (whether from The Advent Group or otherwise), her pleading does not explain what "earned credit" was missing for 2010, the amount of any such credit, or how it affected the SSA's decision.[4]

---

[4] In a section titled, "Additional Information," Plaintiff's pleading provides a single, lengthy narrative paragraph with dates ranging from 2015-2017.  (ECF No. 1, PageID.5.)  Within this paragraph, Plaintiff claims, *inter alia*, that she "could no longer work in 2017 . . . [,]" had "multiple ailments worsening in 2017 . . . [,]" and "applied for Social Security benefits in January of 2017 when [she] could no longer perform [her] work duties," seemingly resulting in her physician ordering

### 2. Opinion evidence (20 C.F.R. § 404.1527)

In a section of her motion labeled, "Law and Argument," Plaintiff claims: "The first issue is that the ALJ, Donald D'Amato, partook in legal error," because he "rejected all medical opinions and may have substituted his own lay opinion in formulating the RFC." (*Id.*, PageID.1192.) Plaintiff also contends "there is argument that the ALJ may have been better served by calling a medical expert to review the evidence and evaluate the medical testing data for the relevant period[,]" due to "the age of the claim, which ultimately resulted in the collection of outdated medical opinions." (*Id.*) Put another way, Plaintiff challenges "the sufficiency of the State Agency opinions[,]" which she contends "were inherently aged out[,]" because her case "did not get to be reviewed by [the] Appeals Coun[cil], nor [the] ALJ, until well after the [DLI][,]" (ECF No. 12, PageID.1194).

Plaintiff's argument is unavailing. (*Id.* at PageID.1192-1193.) For one thing, ALJ D'Amato explained that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (ECF No. 8, PageID.72.) More substantively, to the extent Plaintiff contests ALJ D'Amato's April 22, 2022

---

her "not to return to work." (ECF No. 1, PageID.5.) However, it is not clear how, if at all, Plaintiff intended to use this "additional information" paragraph of the pleading to challenge ALJ D'Amato's April 22, 2022 unfavorable decision as to KRJ's Title II application (*see* ECF No. 8, PageID.63-87), *i.e.*, that Plaintiff "was not under a disability . . . at any time from June 1, 2016," the AOD, "through December 31, 2016," the DLI.

discussion of the "medical opinions of record," the ALJ's assignments of weight were followed by explanations.  First, the ALJ assigned "little weight" to:

- Rodolfo Farhy, M.D.'s advice to "wear compression stockings as recommended, elevate the legs when possible, and walking exercise daily at least 30 minutes" (citing ECF No. 8, PageID.1053 [August 2015], 1059 [September 2015], 1063 [November 2015], 1067 [December 2015], 1071 [August 2018]).

(ECF No. 8, PageID.78.)  The ALJ explained these "were recommendations given during the claimant's treatment course for venous insufficiency, which were successfully treated in 2015 (prior to the [AOD]) with resolution of symptoms[,]" and also explained that "physical exams performed during the period at issue reflect no lower extremity edema that would support the need for leg elevation during that time[.]"  (*Id*. (*citing id*., PageID.1070, 488, 483).)  Second, the ALJ assigned "little weight" to:

- The PCP's (May Antone, M.D., P.C.) December 2015 progress notes, which reference a work note for 4 weeks off based on cervical spine disc disease and bilateral shoulder arthritis diagnoses (*see* ECF No. 8, PageID.1113).

(ECF No. 8, PageID.78.)  The ALJ noted its "temporary nature" and that it "pertains to a time period that is prior to the period at issue in this decision." (*Id*.)  Third, the ALJ assigned "little weight" to:

- Several Disability Certificates completed in 2018 (and in 2019, signed by Ayman Tarabishy, M.D.) (*see, e.g.*, ECF No. 8, PageID.756-765);

12

- Treatment records (from Dr. Tarabishy) (*e.g.*, *id.*, PageID.571, 578, 588, 594, 597, 639, 644, 649, 653, 670, 673, 677, etc.).

(ECF No. 8, PageID.79.) The ALJ explained that these disability certificates and treatment records "do not relate to the period at issue in this decision and pertain to impairments that developed after that time." (*Id.*, PageID.79.) Finally, the ALJ assigned "little weight" to:

- The state agency medical and psychological consultants' opinions, including Anthony Gensterblum, Ph.D.'s January 20, 2021 mental RFC assessment (*id.*, PageID.169-172, 195-198), Alyce Metoyer, D.O.'s November 19, 2020 physical RFC assessment (*id.*, PageID.164-169, 190-195), Dr. Jerry Csokasy's April 27, 2021 mental RFC assessment (*id.*, PageID.214-215, 228-229); and, Reuben Henderson, D.O.'s April 21, 2021 physical RFC assessment (*id.*, PageID.212-214, 226-228).

- The January 12, 2021 consultative examination (CE) report of licensed psychologist Hugh D. Bray, PhD. (ECF No. 8, PageID.1007-1013) and the April 6, 2021 CE report of Bina Shaw, M.D. (*id.*, PageID.1015-1026).

(ECF No. 8, PageID.79.) The ALJ explained that the state agency and CE opinions "relate to a time period that is past the [DLI]" and "consider impairments that developed after the period at issue in this decision." (*Id.*, PageID.79.)

To the extent Plaintiff intended to challenge the ALJ's consideration of the opinion evidence, Plaintiff does not illustrate what was errant about ALJ D'Amato's multiple assignments of weight or his application of 20 C.F.R. § 404.1527. To the extent Plaintiff claims the ALJ "may have substituted his own

13

lay opinion in formulating the RFC" or "may have been better served by calling a medical expert to review the evidence and evaluate the medical testing data for the relevant period[,]" Plaintiff has not cited or discussed how ALJ D'Amato failed to comply with a related regulation, such as 20 C.F.R. § 404.1517 ("Consultative Examination at Our Expense.") or 20 C.F.R. § 404.1519a ("When we will purchase a consultative examination and how we will use it."). In any event, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917). *See also Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.") (citing 20 C.F.R. § 416.917(a)). Moreover, Plaintiff contends that, on a claim for social security DI benefits, "medical opinions and diagnoses of treating physicians" are entitled to "substantial deference" and, if uncontradicted, "complete deference . . . ." Yet, she does not support this statement with a citation to the administrative record; instead, Plaintiff cites only the procedural history and decision (conclusion) in *Lover v. Comm'r of Soc. Sec. Admin.*, No. 5:13-CV-1861, 2014 WL 2772704, at *1, *13 (N.D. Ohio

14

June 18, 2014) (a case analyzing Plaintiff's credibility and a treating physician's opinion).  (ECF No. 12, PageID.1192-1193.)

Finally, the other cases she cites do not aid her cause.  True, "pain may be a sufficient disability for social security purposes[.]" *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).  *See also Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 386 (6th Cir. 1978) (discussing subjective, personal testimony); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (discussing subjective evidence of appellant's pain).  However, a string cite of cases, accompanied by the statement that "[c]osmetologist work is not sedentary enough for Plaintiff who suffered from lower back pain and shoulder injuries[,]" (ECF No. 12, PageID.1192), does not present a developed or properly supported argument challenging either the ALJ's statement that he considered Plaintiff's symptoms "based on the requirements" of 20 C.F.R. § 404.1529 and SSR 16-3p or the ALJ's conclusion that Plaintiff's alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (ECF No. 8, PageID.72, 74.)  Undeveloped arguments "are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997).

       **3.**     **Step II, Step III, and/or RFC**

15

Plaintiff argues the second issue is her "multiple ailments on the Lists of Severe impairments listed under the Title II Act for Social Security Disability, that the Plaintiff could not sit or stand for [an] eight-hour workday or daily activities." (ECF No. 12, PageID.1193.)  Unaccompanied by an express citation to the administrative record, Plaintiff states: "In 2016, [she] decreased full time work week reduced to three days a week for four hours a[] day.  [She] was unable to lift her arms and use her arms to function and was in severe pain to do any gainful activity."  (*Id.*)

Perhaps Plaintiff intended to challenge the ALJ's conclusions with respect to severe impairments at Step II, listings at Step III, exertional limitations (lifting and/or carrying, sanding and/or walking, sitting, pushing and/or pulling) within the RFC, or treatment of subjective symptoms within the RFC.  (*See, e.g.*, ECF No. 8, PageID.69, 71, 72, 74.)  If so, Plaintiff has not developed these arguments either.  While the Court suspects Plaintiff may have been alluding to her hearing testimony about not working full-time after June 1, 2016 (*see id.*, PageID.102) or her function report's information about daily activities (*see id.*, PageID.421-424), Plaintiff simply block quotes the synopsis and the conclusion in *King v. Heckler*, 742 F.2d 968, 968, 975 (6th Cir. 1984).  (ECF No. 12, PageID.1193-1194.)  If Plaintiff intended to challenge one or more of ALJ D'Amato's April 22, 2022 findings, she must do so with greater specificity (*e.g.*, direct the Court's attention to the

challenged portion of the ALJ's written decision, point the Court to a particular part of the administrative record, cite the relevant regulation, *etc*.). And then she must, but does not, explain how the ALJ legally erred. To the extent Plaintiff is looking for the Court to re-weigh the evidence of her own reports and testimony (again, without showing how the ALJ erred in finding that Plaintiff's alleged symptoms were not entirely consistent with the medical and other evidence of record), the Court's "'task is not to reweigh the evidence. That is solely the province of the Secretary.'" *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).

### F. Conclusion

The Commissioner's cross-motion for summary judgment points out how Plaintiff's subjective symptoms and medical opinions arguments are "underdeveloped[.]" (*See, e.g.,* ECF No. 14, PageID.1225, 1227.) Yet, even Plaintiff's reply, which, *inter alia*, contains several mentions of symptoms, including pain, is devoid of citations to the administrative record. (*See* ECF No. 15, PageID.1233.) In sum, Plaintiff has the burden of proof on her statement(s) of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error

in ALJ D'Amato's April 22, 2022 decision.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  April 16, 2024                         s/*Anthony P. Patti*
                                               Anthony P. Patti
                                               UNITED STATES MAGISTRATE JUDGE